IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MARK DORUS, | ) | |
| | ) | CASE NO.    4:10-cv-01657 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Robert Mark Dorus ("Dorus") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

## I.  Procedural History

On July 3, 2006, Dorus filed an application for POD, DIB, and SSI alleging a disability onset date of January 7, 2006 due to shortness of breath and heart blockage.  His application was

denied both initially and upon reconsideration.  Dorus timely requested an administrative

hearing.

On May 23, 2008, an Administrative Law Judge ("ALJ") held a hearing during which

Dorus testified.[1]  Charles Cohen testified as an impartial vocational expert ("VE").  On July 22,

2008, the ALJ found Dorus was able to perform a significant number of jobs in the national

economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied further review.

## II.  Evidence

### Personal and Vocational Evidence

Age fifty-two (52) at the time of his administrative hearing, Dorus is a "person closely

approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 404.1563(d) &

416.963(d).  Dorus has a limited education and past relevant work as a general laborer/truck

driver, house painter, and lubrication technician.  (Tr. 28.)

### Hearing Testimony

At the hearing, Dorus testified to the following:

- He lives with his two grown sons and ex-wife.  (Tr. 35.)

- He completed the eleventh grade and never obtained a GED.  (Tr. 36.)

- He served in the United States Army from 1972 to 1979 and received an honorable discharge.  *Id.*

- His last job was in 2006 repairing fire hydrants, water and sewer lines, and blacktop driveways.  It was heavy work and he stopped after a few months because he could not keep up.  (Tr. 38-39.)

---

[1]  Dorus was represented by "Brenda White, a non-attorney" according to the ALJ's opinion, though the hearing transcript refers to Ms. White as an attorney.  (Tr. 15, 33.)

- A month earlier, he had begun receiving a $941 monthly stipend from the VA. (Tr. 40.)

- He quit drinking in 2004.  Using a prescription for Chantix, he also cut down his cigarette smoking from 1.5 packs per day to only one or two cigarettes per day. (Tr. 41-42.)

- He takes other medications to help treat his heart and for hallucinations.  (Tr. 42.)

- He suffers from shortness of breath, and needs to sit down every ten to fifteen minutes.  (Tr. 43.)

- He can only lift two to three pounds due to pain in has back and left side.  (Tr. 43-44.)

- He can drive, but does not do so very often.  He mostly stays at home and watches TV.  He does not grocery shop or perform repairs around the house.  He does not leave the house to attend church or sporting events.  He does not shovel the driveway, but can mow the lawn on a riding mower for twenty to twenty-five minutes before needing a break.  (Tr. 44-45.)

- He weighs 243 pounds.  (Tr. 46.)

- He experiences pain in both legs and has trouble walking up steps.  (Tr. 46.)

- His hands shake "a little bit" and are not as steady as they used to be.  (Tr. 47.)

- When he sits at home, it is with his feet up.  He lays down once in the morning and once in the afternoon, as his medications make him drowsy.  (Tr. 47.)

The VE testified that Dorus's past work was medium and semi-skilled.  (Tr. 48-49.)  The ALJ posed several hypothetical questions to the VE, all assuming someone of the claimant's age with the same education and work experience.  (Tr. 49-50.)  First, the ALJ asked the VE to assume the hypothetical person "would be limited to simple instructions; should avoid close interaction with co-workers; and would be limited to light work."  (Tr. 49.)  The VE responded that such person could perform several jobs in the national economy, including light guard jobs (500,000), light cleaning jobs (2,000,000), and light packing jobs (700,000).  *Id*.  The ALJ

3

posited further restrictions – only occasional stooping and crouching, but frequent performance of other postural activities. *Id*. The VE testified that such limitations would not affect his previous testimony. *Id*. The ALJ then added additional restrictions – a third grade reading level and avoidance of an assembly line pace. *Id*. The VE testified that these additional restrictions would eliminate half of the packing jobs. *Id*. The ALJ then modified the hypothetical as follows: "[n]ow if this person could only stand and walk for about a half-hour at a time and, therefore, would need a sit/stand light job, would that affect your testimony?" (Tr. 50.) The VE responded that such an individual would be unable to perform the cleaning jobs, but could perform the packing jobs and half of the light guard jobs. *Id*. Other limitations posited by the ALJ had no effect on the VE's testimony.[2] *Id*.

Finally, the ALJ asked the VE if a limitation of only two to three hours of standing and/or walking affected his testimony. (Tr. 50.) The VE testified that such a limitation would generally preclude the performance of all light jobs. *Id*. The ALJ also inquired whether Dorus had any transferable skills to sedentary work. *Id*. The VE replied in the negative. *Id*. The VE stated that his testimony conformed to the description of jobs in the Dictionary of Occupational Titles ("DOT"). (Tr. 51.)

In response to the questions by Dorus's representative, the VE testified that a person who was off-task at least twenty-five (25) percent of the day or missed three to four days per month due to medical impairments would be unemployable. (Tr. 51.)

---

[2] Limitations including only routine, repetitive work and avoidance of concentrated exposure to dusts, odors, and gases did not have any impact on the jobs identified by the VE. (Tr. 50.)

4

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when she became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Dorus was insured on his alleged disability onset date, January 7, 2006, and remained insured through the date of the ALJ's decision. (Tr. 18.) Therefore, in order to be entitled to POD and DIB, Dorus must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

---

[3] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

## IV.  Summary of Commissioner's Decision

The ALJ found Dorus established medically determinable, severe impairments, due to coronary artery disease with shortness of breath, osteoarthritis in the knees, hips and right ankle, borderline intellectual functioning, and a depressive disorder.  (Tr. 18.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Dorus was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Dorus is not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than

a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI.  Analysis

Dorus claims the ALJ's conclusion at Step Five was deficient due to his misplaced reliance on the VE's testimony.  At the fifth step, Dorus correctly argues, the burden shifts to the

7

Commissioner to demonstrate that there are a significant number of jobs in the national and regional economy that a person with his limitations could perform if he is unable to perform his past relevant work.  (Pl.'s Br. at 7.)  *See, e.g., Young v. Califano*, 633 F.2d 469, 470 (6th Cir. 1980) ("When an applicant for disability benefits establishes his inability to return to his former occupation, the burden shifts to the Secretary to show that the plaintiff retains residual capabilities which would permit him to engage in other substantial gainful employment."); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) (a claimant establishes a *prima facie* case of disability by showing that he has a medical basis for an impairment that prevents him from engaging in his particular occupation, at which point it becomes the Secretary's burden to establish the claimant's ability to work); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794 (6th Cir. 2004).

Specifically, Dorus asserts that the ALJ's reliance on the VE's testimony was improper because it could not be determined from the ALJ's hypothetical whether a person with Dorus's limitations could perform light work or only sedentary work.  (Pl.'s Br. at 8-18.)  Because he is a person closely approaching advanced age with a limited education and no transferable job skills, Dorus asserts that a limitation to sedentary work would compel a determination that he is disabled.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.10.  (Pl.'s Br. at 11.)

The ALJ found that Dorus retained a RFC for "light work," but could only stand for "a total of 30 minutes at one time" and required a sit/stand option.  (Tr. 23.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

---

[4]  The ALJ found that Dorus had a limited education, but did not make a determination as to whether Dorus had transferable job skills deeming it immaterial.  (Tr. 28.)  Nonetheless, the VE testified that Dorus had no transferable job skills to sedentary work.  (Tr. 50.)

8

to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  "Since frequent lifting or carrying requires being on ones feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  SSR 83-10, 1983 SSR LEXIS 30.  Dorus asserts that the ALJ's decision is deficient, because he did not specify the length of the breaks needed between the thirty minute periods of walking.  (Pl.'s Br. at 13-15.)

It can reasonably be assumed that the ALJ is well aware of the basics of social security law and knew that light work requires up to six hours of standing per day.  If Dorus's argument was valid, an ALJ would have to specify in his hypothetical to a VE all the lifting, walking, and standing requirements that light work entails.[5]  None of the rulings cited by Dorus stands for such a proposition and are either inapplicable or distinguishable on their facts.  Social Security Ruling ("SSR") 83-12 states as follows:

1. Alternate Sitting and Standing

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who

---

[5]  Dorus argues that the length of the rest periods between the thirty minutes of standing/walking, if lengthy, could undermine his ability to stand/walk for the requisite six hours necessary for light work.  Clearly, if the ALJ contemplated such lengthy rest periods amounting to more than two hours a day, he would have ascribed Dorus a different RFC.

can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.

The ALJ's opinion is consistent with the requirements of SSR 83-12, as he first asked the VE whether there would be jobs in the light category, and then followed up by specifically asking about the impact of standing for no more than thirty minutes at a time and a sit/stand option.  (Tr. 49-50.)  Conversely,  SSR 96-9p, by its very terms, seeks only to "explain the Social Security Administration's policies regarding the impact of a residual functional capacity (RFC) assessment for less than a full range of *sedentary work* on an individual's ability to do other work." (emphasis added).  Likewise, the following cases citing cited by Dorus contain situations wherein the ALJ found that an individual could perform sedentary work with a sit/stand option. *See Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 499 (6th Cir. 1985) (finding that a sit/stand option was inconsistent with the demands of *sedentary* work); *Ferraris v. Heckler*, 728 F.2d 582, 586 (2nd Cir, 1984) (finding that ALJ failed to discuss the requirements of *sedentary* work and his finding was, therefore, insufficient); *Ripley v. Chater*, 67 F.3d 552, 557 at n. 25 (5th Cir. 1995) (the need to alternate between sitting and standing in order to work the entire day does not fit within the definition of *sedentary* work); *Castrejon v. Apfel*, 131 F. Supp.2d 1053, 1057 (E.D. Wis. 2001) (holding that RFC finding was insufficient where the plaintiff was limited

10

to *sedentary* work with a sit/stand option).  Finally, Dorus misstates the holding of *Thomas v. Halter*, 131 F.Supp.2d 942, 944 (E.D. Mich 2001), wherein that court found no error and *rejected* the plaintiff's argument that "the ALJ wrongly decided that Plaintiff could perform a range of light work with a broadly posited sit/stand option." (Internal quotations omitted).

Therefore, absent any law compelling a remand where an ALJ finds that a claimant can perform light work with a sit/stand option without specifying the precise length of the breaks, Dorus's sole assignment of error is not well taken.  The ALJ proffered an adequate hypothetical to the VE; and, in turn, the ALJ's reliance on the VE's testimony was acceptable.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

IT IS SO ORDERED.


/s/ Greg White
U.S. Magistrate Judge

Date: September 22, 2011